```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

|                         |   |                              |
|-------------------------|---|------------------------------|
| JOHN WILLIS COX         | : |                              |
|                         | : |                              |
| v.                      | : | Civil Action No. DKC 12-0231 |
|                         |   | Criminal Action No. 08-328   |
|                         | : |                              |
| UNITED STATES OF AMERICA|   |                              |
|                         | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are motions filed by Petitioner John Willis Cox ("Mr. Cox" or "Petitioner") for reduction of sentence (ECF No. 705),[1] to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (ECF No. 748), and to amend his habeas petition (ECF No. 817). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, all three motions will be denied.

**I.  Background**

As a result of extensive drug-related criminal activities, Petitioner was charged with multiple charges in a six-count multi-defendant superseding indictment. Specifically, on August 31, 2009, a grand jury returned a superseding indictment charging Petitioner and others with conspiracy to distribute five kilograms or more of cocaine and 50 grams or more of

---

[1] All citations to electronic court filings refer to the docket in the criminal case.

cocaine base between February 2007 and February 2009, and charging him individually in five other substantive counts with drug trafficking and firearms offenses. (*See* ECF No. 339). Multiple attorneys were appointed to represent Petitioner throughout the course of the case; Robert Waldman eventually was appointed to represent Petitioner, and indeed represented him through the remainder of the case.

On October 19, 2009, the court scheduled an eight week trial to begin on April 6, 2010. (ECF No. 409). On March 11, 2010, the trial for the then-eight remaining defendants was rescheduled to begin on May 4, 2010. (*See* ECF No. 459). On April 29, 2010, Petitioner signed a plea agreement and appeared for a Rule 11 hearing. (*See* ECF No. 503). At the Rule 11 hearing held on April 29, 2010, Petitioner pled guilty to counts one and six of the superseding indictment, charging him with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (count one), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g) (count six).[2]

In the plea agreement, the parties stipulated to a base offense level of 34 as to the drug conspiracy because Mr. Cox was responsible for 15 kilograms but less than 50 kilograms of

---

[2] The court granted the Government's oral motion to dismiss counts 1 and 2 of the original indictment and counts 2 through 5 of the superseding indictment. (*See* ECF No. 660).

2

cocaine. (*See* ECF No. 758-3, at 4). The parties agreed that if it was determined that Petitioner was a career offender, the offense level would be 37. (*Id.*). A two-level upward adjustment applied because Mr. Cox possessed a dangerous weapon. As for the firearms offense, the parties stipulated to a base offense of 24 because Mr. Cox committed the offense after sustaining two convictions of a controlled substance offense. The plea agreement stated that the drug and gun offenses are closely related offenses pursuant to U.S.S.G. § 3D1.2(c). The plea agreement further advised that the Government would not oppose a two level reduction in Petitioner's adjusted offense level based on acceptance of responsibility. Earlier in the case, the Government filed a notice informing the court of Petitioner's two prior felony convictions. (*See* ECF No. 229). In exchange for Petitioner's guilty plea, the Government agreed to withdraw the notice of the two prior felony drug convictions. (ECF No. 758-2, at 23).

On May 2, 2011, Petitioner was sentenced to 168 months imprisonment on count one, to run concurrently with 120 months imprisonment on count six, followed by five years of supervised release on count one, to run concurrently with three years on count six. (ECF No. 661).

On September 15, 2011, Petitioner filed a motion for reduction of sentence pursuant to 18 U.S.C. § 3582. (ECF No.

705).  He received correspondence on September 19, 2011 advising him that the court "is examining the retroactive application of the guidelines and is developing a mechanism to provide counsel to those who may benefit from the Amendment."  (ECF No. 706). Petitioner filed the instant habeas petition on January 24, 2012.  (ECF No. 748).  The Government opposed the motion, (ECF No. 758), and Petitioner replied (ECF No. 761).  On July 2, 2013, Petitioner moved to amend his motion to vacate, set aside, or correct sentence.  (ECF No. 817).  The Government did not respond to that motion.[3]

**II.  Motion to Vacate, Set Aside, or Correct Sentence**

    **A.   Standard of Review**

28 U.S.C. § 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  If the Section 2255 motion, along with the files and records of the case, conclusively shows that petitioner is not entitled to relief, a

---

[3] Petitioner has since written to the court inquiring about the applicability of Amendment 782 to his situation.  (ECF No. 824).  He was advised that the Federal Public Defender would look into filing a motion on his behalf, if appropriate.  (ECF No. 825).

4

hearing on the motion is unnecessary and the claims raised in the motion may be summarily denied. *See* 28 U.S.C. § 2255(b).

### B. Analysis

Petitioner asserts two grounds for relief in the instant motion. First, he argues that the court should resentence him pursuant to the Fair Sentencing Act of 2010 ("FSA"). Second, he contends that his attorney, Mr. Waldman, rendered ineffective assistance by not giving him time to review the plea agreement, pressuring him into pleading guilty, and assuring him that he would receive a lower sentence than he actually received.

#### 1. Fair Sentencing Act

Petitioner argues that the FSA applies retroactively to his case and that his sentence should be reduced to reflect the new ratio for crack cocaine. Petitioner contends, in relevant part:

> The Fair Sentencing Act of 2010 [] established a[n] 18-1 ratio of crack to powder cocaine. Applying this ratio to the Petitioner's 464.4 grams of crack the conversion to marijuana is 1440 kilograms of marijuana. This added to the converted amount of powder cocaine the Petitioner is held responsible for in the Plea Agreement, will result in a Guideline of 30 [and] a potential 120 month sentence. []Petitioner was sentence[d] to the 120 month mandatory minimum for the gun charge, which was concurrent with [the] drug charge. Therefore, in the re-sentencing the combined sentence should result in a sentence of 120 months.

(ECF No. 748, at 21).


Petitioner's arguments are misplaced. Judge Hollander explained:

> The purpose of the FSA and the related amendments to the guidelines [i.e., Amendments 748 (eff. Nov. 1, 2010), 750 (eff. Nov. 1, 2011), and 759 (eff. Nov. 1, 2011)] was to partially alleviate the so-called "*crack v. powder disparity*," by which defendants who were convicted of a drug offense involving a given amount of cocaine base (a.k.a. "crack") were exposed to substantially higher guidelines sentences and statutory maximum sentences than defendants convicted of offenses involving the same amount of powder cocaine. *See United v. Bullard*, 645 F.3d 237, 245 & n.4[ ] (4th Cir.), *cert. denied*, 132 S.C.t 356 (2011). The FSA lowered the disparity but did not eliminate it. *Id.* The disparity now corresponds to a weight ratio of approximately 18:1 (*i.e.,* it takes approximately 18 times as much powder cocaine as crack to trigger a given statutory minimum sentence or guidelines base offense level); under prior law, the ratio was 100:1. With respect to the Sentencing Guidelines, the reduction of the crack/powder disparity was accomplished by amending the "Drug Quantity Table" in U.S.S.G. § 2D1.1(c), which establishes the base offense levels for conviction of an offense involving given quantities of any particular controlled substance. In Amendment 759, the United States Sentencing Commission made the amendments to the Drug Quantity Table eligible for retroactive application via resentencing, pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.

*United States v. Schuyler*, Crim. No. ELH-98-259-13, 2013 WL 1707895, at *2 (D.Md. Apr. 19, 2013) (footnote omitted; emphasis in original). In *Dorsey v. United States*, 132 S.Ct. 2321

(2012), the Supreme Court determined that the sentencing amendments enacted pursuant to the FSA, were to be retroactively applied. Specifically, the Supreme Court noted that the "new [mandatory] minimums apply to all of those sentenced after August 3, 2010," even if the underlying criminal conduct occurred before that date. *Id.* at 2336.

As the Government argues, however, although Mr. Cox's original plea offer included references to crack cocaine, those references were all *stricken* from the plea before or during the Rule 11 hearing. (*See* ECF No. 758-3, at 4; *see also* ECF No. 758-2, at 14 ("Under the changes that we've made, Your Honor, we should probably strike the reference to crack, and we can sig[n] that."). The statement of facts to which Petitioner agreed based his sentence entirely on his responsibility for between 15 and 50 kilograms of cocaine powder, not cocaine base (*i.e.*, crack). (ECF No. 758-4). All references to crack were stricken in the plea agreement and in the statement of facts to which Petitioner agreed, including the 464.6 grams of crack figure that Petitioner references in his motion. The Presentence Report reflected that Mr. Cox was responsible for at least 15 kilograms but less than 50 kilograms of cocaine, *not* cocaine base. Thus, Petitioner's sentence was not based on the pre-FSA crack cocaine penalty scheme or Sentencing Guidelines that implemented those penalties.

**2.   Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim under *Strickland*, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 688. To demonstrate actual prejudice, Petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In the *Strickland* analysis, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688—89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must assess the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *See id.* at 697.

A petitioner who pleads guilty has an especially high burden in establishing ineffective assistance of counsel. As the Supreme Court explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id.*

The burden has not been met here. Petitioner asserts in the instant motion that he did not understand the plea agreement and counsel assured him that he would receive a substantially lower sentence than he actually received. (ECF No. 748, at 23). He further contends:

> Petitioner was not allowed the time to review, and think about, and ask questions about the Plea Agreement. []Petitioner did answer all questions in the court's colloquy. This has always been recognized as a rote agreement. []Petitioner was induced to sign the Plea Agreement. [He]

9

> then was immediately rushed into court to plead guilty. []Petitioner was instructed to answer yes to all questions posed by the court, by [] [P]etitioner's counsel.

(*Id.*). Petitioner signed the plea agreement on April 29, 2010, the same date that he appeared at the Rule 11 hearing. Petitioner states that he did not – and still does not – understand the terms of the plea agreement, that he did not have time to read or understand it, and that his attorney indicated to him when he signed the plea agreement that he would be sentenced "to a substantially lower sentence." (*Id.* at 24).

Petitioner's contentions directly contradict statements he made under oath during his Rule 11 colloquy. The United States Court of Appeals for the Fourth Circuit has held that in the absence of "extraordinary circumstances," the truth of statements made in a Rule 11 colloquy is "conclusively established" and that a district court should "dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005); *see also United States v. Morrow*, 914 F.2d 608 (4th Cir. 1990) ("[S]uch declarations made in open court carry a strong presumption of veracity.").

During the guilty plea colloquy, the court explained the charges to which Petitioner was pleading guilty. (*See* ECF No. 758-2, at 5-6). When asked whether he understood the charges,

10

Petitioner responded in the affirmative. Moreover, Petitioner provided the following responses when asked about his decision to plead guilty and his satisfaction with counsel:

> Q: Other than what is written down, has anybody made any promise to you to convince you to plead guilty?
>
> A: No.
>
> Q: Have you been threatened in any way?
>
> A: No.
>
> Q: How many times did you meet with Mr. Waldman to talk about the plea in this case?
>
> A: Several.
>
> Q: Several times. And I'm sure there were other times even before any such plea agreement was discussed. Has he always had the time that you thought was necessary to talk with you about this case?
>
> A: Yes.
>
> Q: Has he answered all of your questions?
>
> A: Yes.
>
> Q: Are you satisfied with the help he has provided you in this case?
>
> A: Yes.

(ECF No. 758-2, at 29-30). As indicated above, Petitioner was specifically asked whether anyone made promises to him to convince him to plead guilty and whether Mr. Waldman had spent the time he thought was necessary in consultation with Petitioner, and he answered affirmatively, under oath.

11

Petitioner has done nothing to refute those statements in the instant motion. See, *e.g., Marchante-Rivas v. United States*, Civ. Action NO. DKC 10-0063, Crim. No. DKC 05-0393, 2013 WL 1104071, at *4 (D.Md. Mar. 14, 2013) ("While he suggests in conclusory fashion that additional investigation or consultation was needed, he has provided no detail of what such investigation would have revealed, nor does he explain how further consultation would have resulted in him resisting the plea and opting instead to proceed to trial.").

In response to the Government's opposition, Petitioner asserts that he only met with his attorney "three times" regarding his plea. (ECF No. 761). The Government attaches as an exhibit to its opposition a document showing Mr. Waldman's billing records pertaining to his representation of Mr. Cox, which further substantiates the representations Petitioner made during the Rule 11 hearing under oath that his counsel invested sufficient time into representing him. (*See* ECF No. 758-1). According to the Government, Mr. Waldman asked the Government in early March 2010 to make a formal plea offer to Mr. Cox, and the billing records indicate that indeed, Mr. Waldman had a phone call with Mr. Cox regarding a potential plea offer on May 12, 2010, and he also met with Mr. Cox at the Central Treatment Facility on March 16, 2010. (*Id.* at 4). The billing records further indicate that Mr. Waldman and Mr. Cox had multiple

meetings with the Government in March 2010, Mr. Waldman spoke with Mr. Cox over ten times - in person or on the phone - and on the days preceding his guilty plea, Mr. Waldman met with Mr. Cox for over 2 ½ hours on April 27 and 28, 2010. (*Id.* at 4-5). Accordingly, Petitioner's assertions that he was "rushed" into accepting the guilty plea or did not have a sufficient opportunity to discuss it with Mr. Waldman are belied by the record, and further undermined by his own sworn representations at the Rule 11 hearing.[4]

Petitioner has not alleged any extraordinary circumstances to justify the contradictions between his sworn statements and his motion. *Compare United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) (acknowledging unique and extraordinary circumstances where the Government conceded that the guilty plea was involuntary), with *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996) (holding that extraordinary circumstances requiring a

---

[4] Petitioner also states in his reply to the Government's opposition that Mr. Waldman and the Government told him that if he didn't take the plea, he would go to trial and "they would give me life in jail." (ECF No. 761, at 1). Indeed, during the plea hearing, the court explained: "[g]iven the fact that the Government has filed a Notice of Prior Qualifying Convictions, if you are found guilty of that offense, and if those alleged convictions in the Notice are sustained, *there would be* a mandatory life sentence that's required on conviction." (ECF No. 758-2, at 7) (emphasis added). Thus, insofar as Mr. Waldman represented to Mr. Cox that if found guilty and if the notice of prior qualifying convictions were sustained, he would be facing a mandatory term of life imprisonment, this representation was accurate.

§ 2255 hearing did not exist where Petitioner's efforts to refute statements he had made in open court were "unsubstantiated"). Because Petitioner has failed to demonstrate any unprofessional errors by his counsel or prejudice resulting therefrom, his ineffective assistance claim cannot prevail.

### C.  Motion to Amend the Habeas Petition

The Government responded to the instant petition on May 1, 2012. Petitioner moved to amend his habeas petition on July 2, 2013, over one year later. A one year statute of limitations applies to the filing a Section 2255 petition. By July 2, 2013, that time period had long since passed. While the Rules Governing Section 2255 Proceedings do not specifically address the procedure for amendments, "courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). In some circumstances, Rule 15(c) will allow an amendment that is otherwise barred by the statute of limitations to relate back to the claims contained in the original filing. "Relation back is permitted when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." *Id.* (quotation marks omitted). Importantly, "[t]he fact that amended claims arise from the same [] sentencing proceeding as

14

the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)." *Id.* at 318; *accord Mayle v. Felix*, 545 U.S. 644, 664 (2005).

In his amended filing, Petitioner appears to challenge his guilty plea as to count six of the superseding indictment – felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Petitioner pled guilty to this count, but he states in his motion for leave to amend that "a jury should have been the one[] who would have decided after the facts who owned the gun and its relevance. . . . The fact is, if true ownership of the gun had been allowed, I would never have signed the plea." (ECF No. 817, at 2). The fact that Petitioner neglected to raise in his initial petition any argument regarding his guilty plea to count six of the superseding indictment (felon in possession of a firearm) does not permit him to argue later that an otherwise untimely proposed amendment relates back. Indeed, Petitioner seeks to assert a completely new claim, challenging his guilty plea as to the firearms offense; this claim is unrelated to the claims made in his original habeas petition, which argued ineffective assistance of counsel and application of the FSA. In sum, Petitioner's motion to amend was untimely filed and the claim he seeks to add does not relate back to the Section 2255 petition. Thus, the claim is time barred.

In any event, Petitioner's arguments essentially amount to an attempt to withdraw his guilty plea well after-the-fact. His contentions are largely belied by the record, which reflects a satisfactory factual basis for the guilty plea on *both* counts and that the plea colloquy was sufficient. During the Rule 11 colloquy, Petitioner indicated that he understood that he was pleading guilty to count six, felon in possession of a firearm:

> The Court: Okay. You have indicated an intent also to plead concerning Count six. That count charges that on or about February 25, 2009, in the District of Maryland, you, have been convicted of a crime punishable by imprisonment for a term exceed one year, did knowingly and unlawfully possessed a firearm, to wit a Highpoint model C nine millimeter semi-automatic hand gun, bearing a particular serial number and loaded with eight rounds of ammunition, in and affecting commerce. That's alleged to have violated Title 18 of the United States Code, section 922(g)(1). Do you understand the charge in Count six?
>
> The Defendant: Yes, ma'am.

(ECF No. 758-2, at 8). At the Rule 11 hearing, Petitioner swore under oath that the stipulated facts were true and agreed that he was, in fact, guilty as charged. The court reviewed, among other things, the allegations of the firearms count, the elements of the offense, the rights Petitioner was waiving by pleading guilty, the maximum statutory penalty, the other terms of the plea agreement, and the guideline stipulations. Notably, Petitioner also was advised that he had the right to plead *not*

16

guilty "to all of these offenses." (*Id.* at 9). The court noted:

> No one can make you come in here and enter a guilty plea. If you plead not guilty, you are presumed to be innocent. That means that you cannot be found guilty of any offense unless there is a trial at which your guilty is proven beyond a reasonable doubt.

(*Id.*). When asked whether he understood all of the rights that he was forfeiting by pleading guilty, Petitioner responded in the affirmative. (*Id.* at 10-11).

Petitioner now attempts to argue that the gun found in his home was not actually his. Absent any credible evidence of his innocence, Petitioner is bound by the representations he made under oath and may not attack the veracity of those representations by way of a Section 2255 motion. *See, e.g., United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) (conclusory assertions of innocence do not justify withdrawal of a guilty plea); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy").

### III. Motion for Reduction of Sentence

Petitioner also moved under 18 U.S.C. § 3582(c) to modify or reduce his sentence. (ECF No. 705). Under this provision, a court may modify a sentence only:

> 1) upon motion of the Director of the Bureau of Prisons if "extraordinary and compelling reasons" exist; 2) if otherwise expressly permitted by statute or Federal Rule of Criminal Procedure 35; or 3) if the sentencing range is subsequently lowered by the Sentencing Commission.

Petitioner's motion asserts that he is entitled to a reduced sentence because of the passage of the FSA.  He "request[s] that he be given the benefit of the retroactive guidelines amendment, which reflects a less harsh and 'excessive' so-called crack/powder cocaine disparity than was reflected in the mandatory guidelines under which he was originally sentenced." (ECF No. 705, at 1).  Considering the conclusion above that the FSA does not apply to Mr. Cox, this motion will be denied.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies a petitioner's motion on its merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims

debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, the court will decline to issue a certificate of appealability on the issues which have been resolved against Petitioner.

**V.   Conclusion**

For the foregoing reasons, Petitioner's motions for reduction of section and to vacate, set aside, or correct her sentence will be denied. The motion to amend his habeas petition also will be denied. A separate order will follow.

                                          /s/
                              DEBORAH K. CHASANOW
                              United States District Judge